UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

   Plaintiff,

V.                                                   Criminal Action No. 5:08CR27-1

DONALD ANTHONY ALEXANDER,

   Defendant.

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO SUPPRESS ORAL STATEMENT(S) BE DENIED

### I. Introduction

A.    Background

Defendant is one of two defendants in a one count indictment charging both defendants with conspiracy to possess with intent to distribute oxycodone.

B.    The Motion

Motion to Suppress Oral Statement(s).[1]

C.    Recommendation

I recommend Defendant's Motion to Suppress Oral Statement(s) be **DENIED** because Defendant was not in custody when he made the statement; the statement was voluntary, knowing and intelligent; and the statement was given after Defendant was given a Miranda warning.

### II. Facts

Testimony was taken from Lt. Richard R. Stead, Lt. Robert Bone (two Weirton, West Virginia Police Department officers), and Donald A. Alexander, the Defendant.

---

[1] Doc. No. 23.

Defendant is a pharmacist who graduated from pharmacy school in May, 2005. Defendant began using controlled substances in April of 2004. In Defendant's view, his use of controlled substances did not become a problem in May of 2005. In November of 2006 Defendant's pharmacy license was suspended for forging prescriptions.

The Brooke Hancock Drug Task Force was investigating a heroin distribution ring called the "Jersey Boys" in Steubenville, Ohio. Defendant first came to the attention of Lt. Stead when Defendant was stopped in a traffic stop and found to be possessing heroin. Defendant's first cousin, Detective Alexander, Weirton Police Department, brought Defendant to Lt. Stead in late December, 2007, or early January, 2008. Detective Alexander and Lt. Stead interviewed Defendant as to what he might know about the Jersey boys.

January 27 or 28, 2008, was the next time Lt. Stead and Defendant came into contact with each other. Lt. Stead had a telephone belonging to the one of the Jersey Boy drug traffickers from a buy-bust. Defendant called the telephone which Lt. Stead possessed. Lt. Stead answered the telephone. Defendant asked to purchase heroin and Lt. Stead made arrangements to meet Defendant and sell him heroin. Defendant met Lt. Stead at the Circle K in Steubenville. Lt. Stead confiscated the money Defendant was going to use to buy the heroin. Lt. Stead said it was $100 and Defendant said it was $90. Lt. Stead told Defendant, who had represented to Detective Alexander and Lt. Stead in the prior interview that he was no longer using heroin, that Lt. Stead would be in touch with Defendant.

On January 29, 2008, Lt. Stead called Defendant and asked Defendant to come to the Sheriff's Department to be interviewed. Defendant who lived only a few blocks away walked to the Sheriff's Department about 8:00 or 8:30 p.m. Defendant sat outside an interview room for a short

period of time and then was invited in to be interviewed by Lt. Stead and Lt. Bone. All three witnesses described what took place during the interview with only a few differences.

All agreed Defendant was interviewed about the Jersey Boy case and the Traubert's Pharmacy breaking and entering. All agreed Defendant confessed to the Traubert's Pharmacy breaking and entering. All agreed that everything on the recorded statement had been discussed in the initial interview. After this initial interview, a tape recording was brought to the interview room and a recorded statement was made. All agreed, and the recorded statement confirms, that Defendant received a Miranda warning prior to the recorded interview and that Defendant confirmed he understood his Miranda rights.

The first difference in testimony is the night Defendant went to buy heroin at Circle K, Defendant said Lt. Stead said give me a call tomorrow to come to the station and get your money back. The second difference is Defendant said the officers did not say Defendant was not under arrest and did not tell Defendant he was free to leave at any time. The parties have different recollections as to when the oral Miranda warning was given. The officers testified the oral Miranda warning was given prior to the inital interview. Defendant testified that the oral Miranda warning was given at the conclusion of the initial interview and just prior to the recorded statement. Defendant said he asked why he was given the Miranda warnings and Lt. Stead said not to be concerned it was just something the officers had to do. The parties also have different recollections as to whether Defendant ever asked whether he needed counsel. The officers said Defendant did not. Defendant said when Lt. Bone left the interview room to get the tape recorder that Defendant asked Lt. Stead if Defendant needed a lawyer and Lt. Stead said ". . . no a lawyer will not help you and will only hurt you." Defendant testified he did not request a lawyer. Finally, the officers

3

thought Defendant was not impaired in any way; Defendant made a voluntary statement; Defendant's will was not overborne in any way. On the other hand, Defendant said he was intimidated by Lt. Bone's raised voice and the officer's holstered firearms; Defendant had used heroin earlier that day; Defendant was impaired; Defendant had no choice but to make a statement; and Defendant's statement was not voluntary. Defendant testified he was not threatened in any way, but that he did not understand the potential consequences of giving an incriminating statement (specifically that these federal charges could be brought). Defendant did not answer whether his statement was of his own free will. Defendant said he did not think he had any choice but to make a statement because of the sequence of events.

### III. The Motion

#### A. Contentions of the Parties

Defendant contends he was in custody when the recorded statement was made. Defendant also contends that failure to record the Miranda warning and failure to get a written Miranda waiver violates the Fifth Amendment. Defendant contends the statement was not voluntary.

The Government contends the motion does not allege Defendant did not receive a Miranda warning. The Government contends the statement was voluntary.

#### B. Discussion.

The standard proof of whether a confession is voluntary is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477 (1972). The standard of proof at suppression hearings is also a preponderance of the evidence. United States v. Matlock, 415 U.S. 164 (1974). It is the burden of the Government to prove a person in custody made a knowing and voluntary waiver of

4

his privilege against self-incrimination and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 474 (1966). The preferred practice in this circuit is an oral Miranda warning followed by an executed written waiver. United States v. Sledge, 546 F.2d 1120, 1122 (4th Cir. 1977).

A person is only entitled to a Miranda warning if he is in custody. Miranda, at 474. The test to determine whether a person is in custody is, considering all the circumstances, is the person's freedom curtained as in an arrest. Berkemer v. McCarty, 468 U.S. 420, 440 (1984). An interview at a police stateion does not by itself establish custody. United States v. Howard, 115 F. 3d 1151, 1154 (4th Cir. 1997). In this case Defendant walked to the police station for the interview. Defendant was not constrained in any way by the officers. There was nothing akin to formal arrest. Therefore, Defendant was not in custody for Miranda purposes and the officers had no duty to give Defendant a Miranda warning.

Assuming, arguendo, that Defendant was in custody and a Miranda warning was required, all three witnesses to the unrecorded interview and the recorded statement agreed that a Miranda warning was given prior to the recorded statement. The only disagreement was when the Miranda warning was given. Further, Defendant said in the recorded statement he understood his Miranda rights. Defendant is college educated and intelligent. Even if Defendant were not college educated and intelligent, virtually everyone in this country who has watched television in the last forty years knows what a Miranda warning is and the consequences of talking to law enforcement officers. Defendant's statement to the officers was knowing, intelligent and voluntary.

C. Recommendation

I recommend Defendant's Motion to Suppress Oral Statement(s) be **DENIED** because Defendant was not in custody when he made the statement ; the statement was voluntary,

5

knowing and intelligent; and the statement was given after Defendant was given a Miranda warning.

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days from the date of this Report and Recommendation, file with the Clerk of the Court the written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 28, 2008

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE