IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

  Plaintiff,

v.           Criminal Action Nos. 5:08CR27-01
                  (STAMP)
DONALD ANTHONY ALEXANDER,

  Defendant.

**MEMORANDUM OPINION AND ORDER
OVERRULING AS MOOT DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
RECOMMENDING THAT THE MOTION TO SUPPRESS
ORAL STATEMENT BE DENIED AND
ADOPTING AND AFFIRMING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION IN ITS ENTIRETY**

I. <u>Facts and Procedural History</u>

On April 1, 2008, the defendant, Donald Anthony Alexander ("Alexander"), was named in a single-count indictment charging him with conspiracy to possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). On May 13, 2008, Alexander filed a motion to suppress his recorded oral statement, to which the United States responded.

On May 28, 2008, United States Magistrate Judge James E. Seibert, following an evidentiary hearing on Alexander's motion to suppress conducted on May 21, 2008, filed a report recommending that the motion to suppress oral statement(s) be denied because Alexander was not in custody when he made the statement; the statement was voluntary, knowing, and intelligent; and assuming, arguendo, that Alexander was in custody, the statement was made after Alexander was given a <u>Miranda</u> warning.

Magistrate Judge Seibert informed the parties that if they objected to any portion of this report, they must file written objections within ten days after being served with copies of his report. Alexander filed objections to the report and recommendation on June 6, 2008. Subsequently, Alexander entered into a plea agreement with the United States, and on September 8, 2008, he entered a plea of guilty before this Court.

This Court believes that a full recitation of the facts is unnecessary in this case. Accordingly, this Court relies on the detailed recitation of facts provided in section II of Magistrate Judge Seibert's report and recommendation based upon his findings from the evidentiary hearing:[1]

> Testimony [at the evidentiary hearing] was taken from Lt. Richard R. Stead, Lt. Robert Bone (two Weirton, West Virginia Police Department officers), and Donald A. Alexander, the Defendant.
> Defendant is a pharmacist who graduated from pharmacy school in May 2005. Defendant began using controlled substances in April of 2004. In Defendant's view, his use of controlled substances did not become a problem [until] May of 2005. In November of 2006 Defendant's pharmacy license was suspended for forging prescriptions.
> The Brooke Hancock Task Force was investigating a heroin distribution ring called the "Jersey Boys" in Steubenville, Ohio. Defendant first came to the attention of Lt. Stead when Defendant was stopped in a traffic stop and found to be possessing heroin. Defendant's first cousin, Detective Alexander, Weirton Police Department, brought Defendant to Lt. Stead in late December 2007, or early January 2008. Detective Alexander and Lt. Stead interviewed Defendant as to what he might know about the Jersey Boys.
> January 27 or 28, 2008, was the next time Lt. Stead and Defendant came into contact with each other. Lt.

---

[1]Typographical errors have been corrected.

Stead had a telephone belonging to one of the Jersey Boy drug traffickers from a buy-bust. Defendant called the telephone which Lt. Stead possessed. Lt. Stead answered the telephone. Defendant asked to purchase heroin and Lt. Stead made arrangements to meet Defendant and sell him heroin. Defendant met Lt. Stead at the Circle K in Steubenville. Lt. Stead confiscated the money Defendant was going to use to buy the heroin. [At the evidentiary hearing,] Lt. Stead said it was $100 and Defendant said it was $90. Lt. Stead told Defendant, who had represented to Detective Alexander and Lt. Stead in the prior interview that he was longer using heroin, that Lt. Stead would be in touch with Defendant.

On January 29, 2008, Lt. Stead called Defendant and asked Defendant to come to the Sheriff's Department to be interviewed. Defendant, who lived only a few blocks away, walked to Sheriff's Department about 8:00 or 8:30 p.m. Defendant sat outside an interview room for a short period of time and then was invited in to be interviewed by Lt. Stead and Lt. Bone. All three witnesses described what took place during the interview with only a few differences.

All agreed Defendant was interviewed about the Jersey Boys case and [a breaking and entering which had occurred at] the Traubert's Pharmacy . . . . All agreed Defendant confessed to the Traubert's Pharmacy breaking and entering. All agreed that everything on the recorded statement had been discussed in the initial interview. After this initial interview, a tape recording [device] was brought to the interview room and a recorded statement was made. All agreed, and the recorded statement confirms, that Defendant received a _Miranda_ warning prior to the recorded interview and that Defendant confirmed he understood his _Miranda_ rights.

The first difference in testimony is the night Defendant went to buy heroin at Circle K. Defendant said Lt. Stead said, "Give me a call tomorrow to come to the station and get your money back." The second difference is Defendant said the officers did not say Defendant was not under arrest and did not tell Defendant he was free to leave at any time. The parties have different recollections as to when the oral _Miranda_ warning was given. The officers testified the oral _Miranda_ warning was given prior to the initial interview. Defendant testified that the oral _Miranda_ warning was given at the conclusion of the initial interview and just prior to the recorded statement. Defendant said he asked why he was given the _Miranda_ warnings and Lt. Stead said not to be concerned, [and that] it was just something the officers had to do. The parties also have different recollections

3

as to whether Defendant ever asked whether he needed counsel. The officers said Defendant did not. Defendant said when Lt. Bone left the interview room to get the tape recorder that Defendant asked Lt. Stead if Defendant needed a lawyer and Lt. Stead said, ". . . no, a lawyer will not help you and will only hurt you." Defendant testified he did not request a lawyer. Finally, the officers thought Defendant was not impaired in any way; Defendant made a voluntary statement; Defendant's will was not overborne in any way. On the other hand, Defendant said he was intimidated by Lt. Bone's raised voice and the officers' holstered firearms; Defendant had used heroin earlier that day; Defendant was impaired; Defendant had no choice but to make a statement; and Defendant's statement was not voluntary. Defendant testified that he was not threatened in any way, but that he did not understand the potential consequences of giving an incriminating statement (specifically that these federal charges could be brought). Defendant did not answer whether his statement was of his own free will. Defendant said he did not think he had any choice but to make a statement because of the sequence of events.

(Mag. Judge's Report and Recommendation 1-4.)

After reviewing the record and considering the parties' pleadings, this Court finds, for the reasons that follow, that Alexander's motion to suppress his oral statement must be denied.

## II. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is made. As to those portions of a report and recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous."

Although Alexander filed objections in this action, this Court will overrule the objections as moot in light of Alexander's

4

subsequent plea of guilty. Because Alexander's objections will be denied as moot, this Court believes that the appropriate standard of review is clear error. However, even under a de novo review, the result is the same.

Whether a confession is voluntary is determined under a preponderance-of-the-evidence standard. Lego v. Twomey, 404 U.S. 477 (1972). Likewise, the applicable standard of proof at a suppression hearing is a preponderance of the evidence. United States v. Matlock, 415 U.S. 164 (1974). The United States bears the burden of proving that a person in custody made a knowing and voluntary waiver of his privilege against self-incrimination and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 474 (1966). In the Fourth Circuit, the preferred practice is to follow an oral Miranda warning by an executed written waiver. United States v. Sledge, 546 F.2d 1120, 1122 (4th Cir. 1977). However, a person is entitled to a Miranda warning only if the person is in custody. Miranda, 384 U.S. at 474.

A person who has not been formally arrested may nonetheless be considered to be in custody for purposes of Miranda if he is subjected to questioning under circumstances in which his "freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)(per curiam)). Such determination must be made under a totality of circumstances, and "neither the location nor the purpose of the interview is

dispositive of whether a suspect is in custody," even when the interview occurs at a police station. United States v. Howard, 115 F.3d 1151, 1155 (4th Cir. 1997).

### III. Discussion

In his motion to suppress his oral statement, Alexander argues that he was in custody when the recorded statement was made, that he was not Mirandized on the recording before the questioning began, and that he did not sign a written waiver of his Miranda rights. Alexander also contends that his statement was not voluntary, but rather the result of leading questions, false promises of leniency, and deception. For these reasons, he claims that the oral statement violates his Fifth Amendment right against self-incrimination; the Due Process clause; and his Miranda rights.

In response, the United States argues that Alexander received a Miranda warning before the recording device was activated, and that the taped interview reflects the defendant's acknowledgment that he received Miranda warnings before the tape was turned on. The Government further contends that under a totality of circumstances analysis, the defendant's statement was voluntary. Accordingly, the Government argues, the defendant's Fifth Amendment, Due Process, and Miranda rights were fully protected.

The magistrate judge determined that Alexander was not in custody when he made the statement because Alexander had walked of his own accord to the police station for the interview and because he was not constrained in any way by the officers. Therefore, the

magistrate judge found, Alexander's freedom was not constrained to a degree associated with arrest. The magistrate judge concluded that Miranda warnings were not required because the statement was not made during a custodial interrogation.

Additionally, the magistrate judge found that even if Alexander was in custody, thereby requiring a Miranda warning, all of the witnesses at the evidentiary hearing agreed that a Miranda warning was given before the recorded statement. Moreover, the magistrate judge found, Alexander stated on the recording that he understood his Miranda rights. Observing that Alexander is college-educated and intelligent, the magistrate concluded that under the circumstances, Alexander's statement was knowing, intelligent, and voluntary.

After reviewing the record and the parties pleadings, this Court agrees with the magistrate judge's determinations. Alexander's contact with the officers was voluntary; the officers' conduct was not coercive; Alexander was not threatened; and no weapons were brandished. Accordingly, this Court finds that Alexander was not in custody for Miranda purposes and that even if he was in custody, Miranda rights were given, Alexander understood his rights, and he knowingly, intelligently, and voluntarily made his statement to the officers after receiving the Miranda warning.

IV. <u>Conclusion</u>

As discussed above, based upon the defendant's subsequent entry of a guilty plea to the offense charged in the indictment, this Court OVERRULES as moot the defendant's objections to the magistrate judge's report and recommendation. Accordingly, this Court finds no clear error in the magistrate judge's report and recommendation. This Court also finds that even applying a de novo review, the magistrate judge's determinations should be affirmed and adopted. Accordingly, this Court AFFIRMS and ADOPTS the magistrate judge's report and recommendation in its entirety and DENIES defendant Donald Anthony Alexander's motion to suppress his oral statement.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the defendant, to counsel of record herein, and to all appropriate agencies.

DATED: October 29, 2008

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE